**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 6 2003**

**PATRICK FISHER**
**Clerk**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

THE PROCTER & GAMBLE
COMPANY, THE PROCTER &
GAMBLE DISTRIBUTING
COMPANY,

      Plaintiffs/Counter-
      Defendants - Appellants,

v.

RANDY L. HAUGEN, individually
d/b/a/ Freedom Associates, Inc.;
FREEDOM TOOLS,
INCORPORATED; FREEDOM
ASSOCIATES, INC.; a Utah
corporation **;** STEVEN E. BRADY,
individually; STEPHEN L. BYBEE,
individually; EAGLE BUSINESS
DEVELOPMENT, INC., a Utah
corporation; TED RANDALL
WALKER, individually; WALKER
INTERNATIONAL NETWORK, a
Texas Partnership; ROGER D.
PATTON, individually,

      Defendants - Appellees.

     and

No. 01- 4155

AMWAY CORPORATION, a
Michigan corporation,

   Defendant/Counter-
   Claimant - Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 1:95-CV-0094-K)**

---

Neil Peck, Snell& Wilmer, LLP (Tracy Fowler, Matt Mayer and Nathan Davis on briefs), Denver, Colorado, for Appellants.

James R. Sobieraj (with Cynthia A. Homan, Timothy Q. Delaney, Dominic P. Zanfardino on briefs), Brinks Hofer Gilson & Lione, Chicago, Illinois (with Joseph J. Joyce, and Kristin A. VanOrman, Strong & Hanni, Salt Lake City, Utah, on briefs) for Appellees.

---

Before **HENRY** and **McKAY** , Circuit Judges , and **BROWN**, District Judge.[*]

---

**HENRY** , Circuit Judge.

In this case, we are asked to consider whether the district court erroneously exceeded the scope of our mandate when it dismissed Procter & Gamble's ("P&G"'s) claims against defendant Amway Corporation. We reject P&G's challenges and conclude that the district court properly complied with our

---

[*] The Honorable Wesley E. Brown, United States District Judge of the District of Kansas, sitting by designation.

mandate.

## I. BACKGROUND

The relevant facts and proceedings are fully set out in the district court's order of June 17, 2001, *Procter & Gamble Co. v. Haugen*, 158 F. Supp. 2d 1286 (D. Utah 2001) ("Dist. Ct. Order"), and in our previous opinion in this case, *Procter & Gamble v. Haugen*, 222 F.3d 1262 (10th Cir. 2000) ("*P&G I*"). As a result, we will only briefly summarize them.

P&G alleges that in 1994, defendants Mr. Haugen and the other distributors (the "Distributor Defendants"), disseminated a voicemail message that identified P&G products and disparaged them as having "Satanic" qualities, as being somehow connected with the Church of Satan. P&G further contends that Amway, the supplier of products to the Distributor Defendants, is liable under the Lanham Act and various state torts.

The district court granted the defendants' motion for summary judgment as to P&G's Lanham Act claim, finding that the Satanic rumor did not contain false representations about the "qualities" or "characteristics" of P&G's products. *See* 15 U.S.C. § 1125(a)(1)(B). P&G then filed a Motion for Reconsideration, arguing that the rumor was actionable under the Lanham Act's "false advertising" provision as a misrepresentation concerning P&G's "commercial activities." The

district court subsequently denied P&G's motion because P&G had previously failed to make such an argument. The district court also (1) dismissed P&G's state law claims of tortious interference with business relationships and unfair competition for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and (2) granted summary judgment to the defendants on P&G's state law claims of slander per se and vicarious liability.[2]

On appeal, we reversed and remanded on P&G's Lanham Act and tortious interference claims. We affirmed the district court's ruling in all other respects.

As to the Lanham Act claim, we noted that we would consider matters not

---

[2] In July 1997, while this action was proceeding in the district court, P&G filed a similar case against Amway and some of the Distributor Defendants in the United States District Court for the Southern District of Texas. *See Procter & Gamble v. Amway Corp.*, 80 F. Supp. 2d 639 (S.D. Tex. 1999) ("*Texas P&G*"). In *Texas P&G*, P&G raised similar, but not identical Lanham Act and state law claims, in addition to two RICO claims under 18 U.S.C. § 1962(c) & (d). The federal district court for Southern District of Texas dismissed some of P&G's tortious interference claims, holding that Texas' one-year statute of limitations barred their consideration. *See id.* at 657. Subsequently and after the District Court of Utah dismissed all remaining claims against the defendants in this litigation, the Southern District of Texas likewise dismissed all the claims against the defendants, based on *res judicata* and a lack of evidence of actual malice. *See Proctor & Gamble v. Amway Corp.*, 242 F.3d 539, 545-46 (5th Cir.), *cert. denied,* 122 S. Ct. 329 (2001). These claims were revisited after we, in *P&G I*, remanded the case. Notably, when P&G appealed from the Southern District of Texas to the Fifth Circuit, it did not appeal the dismissal of its tortious interference claims. After we reversed and remanded in *P&G I,* the Fifth Circuit affirmed in part, reversed in part, and remanded the Texas case to the Texas district court, rejecting the district court's application of *res judicata* or in the alternative, collateral estoppel. *See id.* at 546, 567.

raised in the trial court only in the most unusual circumstances, such as when the public interest is implicated or when manifest injustice would result. *P&G I*, 222 F.3d at 1270. We then concluded that the subject message "clearly related to P & G's 'commercial activities' under § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)." *Id.* a 1271.[3] We thus held that the district court erred in granting summary judgment to the defendants. We instructed "the district court to consider whether P&G has met those elements of a § 43(a) Lanham Act claim not before us in this appeal." *Id.* at 1276 n.10.

As to the tortious interference prong, we determined that "the text of the subject message itself at least raise[d] an inference that the [Distributor Defendants] were attempting to interfere" with P&G's business. *Id.*; *id.* at 1279. We thus reversed and remanded the district court's grant of the defendants' motion to dismiss as to P&G's tortious interference claim.

---

[3]    P&G's Lanham Act claim arises from § 43(a)(1)(B), which provides:
Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
in commercial advertising or promotion, misrepresents the nature, *characteristics, qualities*, or geographic origin of his or her or *another person's goods, services, or commercial activities,* shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B) (emphasis added).

On remand, the district court determined that, to the extent our holding affirmed the district court's earlier ruling, none of P&G's claims against defendant Amway Corporation could survive. Specifically, the court (1) determined that P&G could not establish Amway was vicariously liable under the Lanham Act for the actions of the Distributor Defendants; (2) rejected P&G's assertion of contributory infringement under the Lanham Act; (3) concluded that P&G could not establish the elements of a tortious interference claim; (4) determined that P&G's operative complaint was its Second Amended Complaint, and (5) rejected P&G's product disparagement claim as outlined in P&G's Third Amended Complaint. *See* Dist. Ct. Order, 158 F. Supp. 2d. at 1292-95.

In this appeal, P&G disputes the district court's application of our mandate in *P&G I* and raises five challenges. First, P&G contends that *P&G I's* ruling that Amway is not vicariously liable for actions of the Distributor Defendants applies only to the Utah vicarious liability claim, not to the federal Lanham Act claim. Second, P&G maintains that when we reinstated its § 43(a) Lanham Act claims in *P&G I*, we also resurrected P&G's purported claim for contributory infringement. Thus, asserts P&G, the district court erred when it determined this claim was waived, or in the alternative, when the court found that the claim failed on the merits. Third, P&G disputes the district court's dismissal of its tortious interference with contract claims based on *res judicata* and on the merits. Fourth,

-6-

P&G contends that the *P&G I* mandate revived its claims for product disparagement embodied in its previously rejected Third Amended Complaint. Finally, P&G urges that the district court should have allowed discovery before dismissing Amway as a party. For the reasons set forth below, we reject each of P&G's arguments and affirm the district court.

## II. DISCUSSION

### A. Standard of Review

When reviewing the district court's application of our mandate, we consider whether the court abused the limited discretion that our mandate left to it. *See United States v. Hicks*, 146 F.3d 1198, 1200 (10th Cir. 1998) ("The mandate rule is a discretion-guiding rule that generally requires trial court conformity with the articulated appellate remand.") (internal quotation marks omitted). "'[W]hen the remand is general, however, the district court is free to decide anything not foreclosed by the mandate.'" *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 971 (10th Cir. 1991) (quoting 1B S. Moore, J. Lucas, & T. Currier, *Moore's Federal Practice* § ¶ 0.404[10] (1988). *But cf. Field v. Mans*, 157 F.3d 35, 40 (1st Cir. 1998) ("We review an application of the law of the case de novo.").

### B. Application of the Mandate Rule

Not surprisingly, "[t]o decide whether the district court violated [our] mandate, it is necessary to examine the mandate and then look at what the district

court did." *Id.; see Barber v. International Bth'd of Boilermakers,* 841 F.2d 1067, 1071 (11th Cir. 1988) ("As should be apparent, the application of these mandate rule principles will . . . depend considerably on the stage a case has reached when it goes up on appeal and on the language of the appellate court's mandate and/or opinion."); *see generally,* 18 J. Moore et al., *Moore's Federal Practice* ¶ 134.23 (3d ed. 2002) (discussing the relationship between the law of the case and the mandate rule).

The mandate consists of our instructions to the district court at the conclusion of the opinion, and the entire opinion that preceded those instructions. *See Barber*, 841 F.2d at 1071. Although a district court is bound to follow the mandate, and the mandate "controls all matters within its scope, . . . a district court on remand is free to pass upon any issue which was not expressly or impliedly disposed of on appeal." *Newball v. Offshore Logistics Int'l*, 803 F.2d 821, 826 (5th Cir. 1986); *see Hicks*, 928 F.2d at 966 (noting that with a general mandate, the district court "is free to decide anything not foreclosed by the mandate") (internal quotation marks omitted).

Here, our opinion in *P&G I* instructed the district court to explicitly evaluate P&G's commercial activities claim under § 43(a)(1)(B)of the Lanham Act and to also consider P&G's tortious interference claim. Consequently, at this stage of this convoluted litigation we must consider whether the arguments that

P&G now raises in this appeal were expressly or impliedly disposed of by *P&G I*. *See* Aplt's Br. at 12; *Wyler Summit Partnership v. Turner Broadcasting Sys.*, 235 F.3d 1184, 1193 (9th Cir. 2000) (noting that "[f]or the law of the case doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition").

### C. P&G's Challenges

#### 1. Vicarious Liability

P&G argues that in *P&G I*, we limited our rejection of P&G's claim that Amway was vicariously liable for the dissemination of the message from the Distributor Defendants to vicarious liability under Utah law. Thus, P&G asserts, the district court erred when it examined the balance of P&G's claims and determined that, to the extent P&G's federal claim under the Lanham Act rested upon vicarious liability, P&G's claim against Amway could not survive. P&G urges us to apply a separate analysis to its federal Lanham Act claim.

In *P&G I,* a previous panel of this court held that the district court's grant of summary judgment to Amway on the § 43(a) Lanham Act claim concerning "commercial activities" was "improvident because P&G show[ed] a genuine issue of material fact exists as to whether the subject message is actionable under the 'commercial activities' prong of § 43(a)(1)(B)." 222 F.3d at 1273. In closing, we also stated that we affirmed the judgment of the district court, excepting "the

court's grant of summary judgment on P&G's Lanham Act claim and its dismissal of P&G's Utah tortious interference claim." *Id.* at 1280. We also stated, as to P&G's separately pled vicarious liability claim, that "Amway is not vicariously liable on the facts of this case for the acts of its distributors." *Id.* at 1278 and n.12 (citing Utah law).

In response to P&G's arguments, the district court aptly described P&G's "treatment of its vicarious liability claim(s)" to be "more than a little confusing." 158 F. Supp. 2d at 1294. Until we remanded the case to the district court, P&G's pleadings and briefs made no distinction between Utah vicarious liability and the Lanham Act's application of vicarious liability. Before *P&G I*, P&G's briefs suggested that the standards were analogous if not identical. *See, e.g.,* Aplt's App. vol. I, at 279 and at n.12 (Aplt's Br. on appeal in *P&G I*) (collectively citing Utah law, the Restatement (Second) of Agency, and *AT&T v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1438 (3d Cir. 1994) (applying vicarious liability under the Lanham Act, based upon agency principles set forth in the Restatement)).

On remand to the district court, P&G asserted that although the Tenth Circuit had rejected its vicarious liability claim under Utah law, *P&G I* had no bearing on P&G's vicarious liability claim under the Lanham Act. P&G identifies no discrete distinctions between Utah's vicarious liability standards and those of

the Lanham Act–apart from its vague insistence that the Third Circuit's holding in *AT&T v. Winback and Conserve* is evidence of a standard separate and apart from Utah common law. Although P&G has cited *AT&T* throughout this litigation, it was only after remand that P&G argued that there is a difference between the federal and Utah standards.

P&G's inability to identify such a distinction likely emanates from Congress's intention "for the Lanham Act's infringement provisions to include those common-law principles of enterprise liability that would cover all defendants who used the mark, regardless of whether they made any direct sales to buyers." John T. Cross, "*Contributory Infringement and Related Theories of Secondary Liability For Trademark Infringement,*" 80 Iowa L. Rev. 101, 119 n.73 (1994) (noting that "courts have uniformly imposed vicarious liability in Lanham Act infringement cases" in a related context, and observing that the "same basic rationale" might apply in other infringement actions). A leading treatise characterizes *AT&T* as a case that "held that it is proper to import into § 43(a) common law concepts of agency, apparent authority, and vicarious liability." *McCarthy on Trademarks and Unfair Competition* § 27:53 (4th ed. 2002).

In *AT&T*, the Third Circuit noted its holding was "not expanding the category of affirmative conduct proscribed by [§ 43(a)]," but was merely expanding the class of persons upon "whose shoulders to place responsibility for

-11-

conduct *indisputably proscribed* by [§ 43(a)]." *AT&T*, 42 F.3d at 1430-31 (emphasis in original). The court remanded for further factfinding by the district court as to whether the defendant's sales representatives were defendant's agents. *See id.* at 1439. The court further instructed that "[u]pon remand . . . the district court first must determine whether the sales representatives were agent independent contractors or non-agent independent contractors." *Id.*

In *P&G I*, we held that the Distributor Defendants were "more analogous to independent contractors than to employees under Utah law." 222 F.3d at 1278. We also concluded that the Distributor Defendants were not Amway's agents, because Amway had not vested them with actual, express, or implied authority of any kind. *See id.* We used standards nearly identical to those applied in *AT&T*. *See AT&T*, 42 F.3d at 1439. We also focused on Amway's lack of exercisable control over the Distributor Defendants, noting that "Amway distributors, like retailers, act virtually autonomously in determining in what manner to sell (or consume) Amway products." *See P&G I,* 222 F.3d at 1278; *cf. AT&T*, 42 F.3d at 1439 (suggesting that the "district court should focus on the level of control exercisable" by the principal and the degree to which "the principal is responsible for the third person believing that the person with whom she deals is an agent") (internal quotation marks omitted). Moreover, the district court, on remand, noted the purported variations of vicarious liability between Utah and federal law,

and similarly concluded that *P&G I* rejected P&G's vicarious liability arguments that were based on the *AT&T* Lanham Act case. 158 F. Supp. 2d at 1295 ("[T]he Tenth Circuit's ruling necessarily forecloses a vicarious liability claim under the Lanham Act.").

We hold that P&G's contention that the district court flouted our mandate as to vicarious liability is completely unsupported. P&G has made an insufficient showing that vicarious liability under the Lanham Act is substantially different than under Utah law.

## 2. Contributory Infringement under the Lanham Act

P&G next challenges the district court's refusal to entertain its § 43(a) Lanham Act contributory infringement claim, purportedly asserted in its complaint. Although the district court stated that P&G "has waived th[is] claim," *id.* at 1293, the court also rejected the claim on the merits. Amway urges us to find such waiver. Alternatively, Amway argues that P&G has failed to establish the elements of the claim.

"The law of contributory infringement evolved from the recognition that parties other than the direct infringer often play roles in the infringement." Cross, *Contributory Infringement, supra*, 80 Iowa L. Rev. at 104. Because the infringement test initially adopted under the Lanham Act is not well suited for targeting such secondary liability, an additional theory of liability was warranted.

*See id.*

The Supreme Court outlined the contours of a contributory infringement claim in *Inwood Laboratories Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844 (1982):

> [L]iability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorally responsible for any harm done as a result of the deceit.

*Id.* at 853-54; *see also Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 983 (9th Cir.1999) ("Contributory infringement occurs when the defendant either intentionally induces a third party to infringe the plaintiff's mark or supplies a product to a third party with actual or constructive knowledge that the product is being used to infringe the service mark."); *AT&T*, 42 F.3d at 1432 (applying *Inwood* to a section 43(a) claim).

The elements of a contributory liability claim are thus (1) supply of a product and (2) knowledge of direct infringement. *See Fonovisa, Inc. v. Cherry Auction, Inc.* 76 F.3d 259, 264-65 (9th Cir. 1996) (citing *Inwood*, 456 U.S. at 854). An action for contributory liability is not limited to a manufacturer, but may also extend to licensors, franchisers, or to similarly situated third parties.

*See AT&T*, 42 F.3d at 1432 ("Of course, there is no reason why the doctrine should be confined in application to manufacturers, and indeed, other courts have expanded it beyond that particular origin.") (collecting cases).

P&G does not dispute that it never used the term "contributory infringement" in its previous pleadings. Nevertheless, P&G maintains that "its allegations were sufficient to state the elements of a Lanham Act contributory liability claim" under the notice pleading requirements of Fed. R. Civ. P. 8. Aplt's Br. at 24-25. P&G points to language in its Second Amended Complaint[4] alleging that Amway (1) was informed about the Satanic rumors, (2) allowed the Distributor Defendants to make these statements, and (3) knew or should have known of Distributor Defendants's conduct. *See id.*; Aplt's App. vol. III, at 1041-2 (Second Amended Complaint).

We are reluctant to adopt P&G's broad definition of notice pleading so as to include a claim for contributory infringement. Count Four of the Second Amended Complaint indicated the Distributor Defendants had the "[i]mplied approval of Amway" when they disseminated the statements. *Id.* at 1045. We do

---

[4] P&G also points to language in its Third Amended Complaint. *See* Aplt's Br. at 25 (citing Aplt's App. at 2021 (Third Amended Complaint)). Because we hold that the Third Amended Complaint is not the operative complaint, *see infra*, we need not address this rejected pleading. Even were we to examine the Third Amended Complaint, our conclusion that P&G has not sufficiently asserted a contributory infringement claim would not change.

not believe these pleadings adequately alleged "a short and plain statement of the claim showing that the pleader is entitled to relief" on a claim of contributory infringement. Fed. R. Civ. P. 8(a).

Nevertheless, we do acknowledge that when *P&G I* resuscitated P&G's § 43(a) Lanham Act claim, that part of the mandate might plausibly be read to have restored a contributory infringement claim under § 43(a). In the interest of a comprehensive resolution of the § 43(a) claim, we, like the district court, shall also examine the contributory infringement claim on the merits.

On the merits, however, P&G fares no better than it did below. There is no dispute as to Amway's supplying the product to the Distributor Defendants, thus satisfying the first element. *See Fonovisa*, 76 F.3d at 264-65. As to the second element, Amway's knowledge of direct infringement,[5] we agree with the district court that Amway cannot be held liable for contributory infringement.

In *Inwood*, the Supreme Court considered an action against a manufacturer of generic pharmaceuticals. 456 U.S. at 847. Non-party pharmacists packaged the defendant's less-expensive generic pills, but labeled them with the plaintiff's brand name. *Id.* at 850. This constituted undisputed trademark infringement. *See*

---

[5] For the limited purpose of our examination of the merits of this claim against Amway, we assume that the actions of the Distributor Defendants in disseminating the Satanic message constitutes an infringing activity under the Lanham Act.

*id.* To maintain a successful action for contributory infringement, the plaintiff had to show that the generic pharmaceutical maker "in fact, continued to supply [the pills] to pharmacists whom the [generic manufacturer] knew were mislabeling generic drugs." *Id.* at 855. In *Inwood*, the Court agreed with the findings of the district court and concluded that the plaintiff could not make this showing. *See id.* at 858-59.

Similarly here, P&G cannot establish that Amway "continued to supply" any products to the Distributor upon discovery of the Satanic message. *Id.* at 855. In fact, as the district court noted, Amway did not instruct the Distributor Defendants to spread the rumor, and, in fact, "upon learning of the subject message, Amway suggested that [one of the Distributor Defendants] issue a retraction," which he did. *See* Dist. Ct. Order, 158 F. Supp. 2d at 1294; *see also AT&T*, 42 F.3d at 1433 and n.14 (noting that the plaintiff could not proceed under the doctrine of contributory infringement because where the objectionable acts of the sales representatives were made known to the principal, the principal in turn "took appropriate steps to reprimand and discipline the sales representative"). The district court correctly rejected P&G's contributory infringement claim.

### 3. Tortious Interference

P&G next contests the district court's dismissal of its claim against Amway for tortious interference with business relations. In *P&G I*, we held that P&G

presented sufficient factual allegations of injury resulting from the defendants'

conduct to state a claim for which relief could be granted. *See P&G I*, 222 F.3d

at 1279. We also noted that, after the district court granted the defendants'

motion to dismiss, the United States District Court for the Southern District of

Texas entered summary judgment in favor of Amway as to a similar tortious

interference claim between the parties. In remanding, we observed that "[t]he *res*

*judicata* implications [of the parallel dismissal by the Texas federal district court]

can be addressed on remand." *Id.* at 1279, n.13.

After remand to the district court, the defendants sought summary judgment

on this claim. In reevaluating the claim under the summary judgment standard,

the district court concluded that the Texas federal court's dismissal of some of

P&G's tortious interference claims, which was based on the expiration of the

relevant statute of limitations, was a judgment on the merits, and that "[i]t is . . .

clear that all of the elements of *res judicata* are satisfied." 158 F. Supp. 2d at

1297; *see P&G v. Amway*, 242 F.3d at 545 (noting that the Texas district court

granted P&G's motion for judgment as a matter of law on *res judicata* grounds).[6]

P&G disputes the finality of the federal Texas court's application of the Texas

state law statute of limitations, contending that the one-year statute of limitation

---

[6] As we have noted, the Fifth Circuit held that the Texas district court
erred in applying *res judicata* principles to bar P&G's claim. *See P&G v. Amway*,
242 F.3d at 545-546, 547.

has no preclusive effect in Utah.

The district court also resolved the tortious interference claim against Amway on the merits. In order to establish a claim for tortious interference with business relations, the plaintiff must prove "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations; (2) for an improper purpose or by improper means, (3) causing injury to the plaintiff." *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982). Rejecting this claim, the district court relied upon the

> independent ground that, because this court was affirmed on the dismissal of its vicarious liability claim under Utah law, and because this court has now dismissed P&G's vicarious liability claim under the Lanham Act (to the extent one was ever pleaded), Amway cannot be liable for tortious interference.

Dist. Ct. Order, 158 F. Supp. 2d. at 1298. Given the complicated *res judicata* issues caused by P&G's dual litigation strategy, we shall consider the issue on the merits. *See Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001) (noting that "we are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law") (internal quotation marks omitted).

Like the district court, we note that P&G's claim for tortious interference against Amway presupposed that Amway may be held vicariously liable for the actions of the Distributor Defendants. However, as we have held, the Distributor

-19-

Defendants were not acting pursuant to either Amway's actual, implied, or apparent authority. Accordingly, the district court properly dismissed P&G's tortious interference claim against Amway.

This conclusion is not contrary to our previous determination. In *P&G I*, we noted that P&G's claims against the Distributor Defendants "at least raised an inference that [the Distributor Defendants] were attempting to interfere with P&G's existing or potential economic relations." 222 F.3d at 1279 (internal quotation marks omitted). There, we determined that this claim against the Distributor Defendants should survive the defendants' Rule 12(b)(6) motion. Our conclusion here relates to P&G's tortious interference claim against *Amway*. We make no observation as to the viability of P&G's tortious interference claim against the Distributor Defendants.

### 4. Operative Complaint

In connection with *P&G I*'s remand to the district court to reconsider the tortious interference claim, P&G argues that the mandate reinstated this claim as alleged not only under P&G's Second Amended Complaint, but also in its Third Amended Complaint. Some procedural background is necessary to follow P&G's argument. After Amway and the Distributor Defendants moved to dismiss P&G's tortious interference count from the Second Amended Complaint for failure to state a claim, the district court granted the motion but also gave P&G fifteen days

to amend *only* "that count of the second amended complaint."  Aplt's App. at 1098-99.

Within the fifteen days, P&G served a Third Amended Complaint that did much more than simply amend "that count." The Third Amended Complaint amended several of P&G's claims.  For example, P&G expanded the Lanham Act claim to include a claim for product disparagement.  *See* Aplt's App. at 189–212.

After P&G submitted the Third Amended Complaint, the district court again dismissed the tortious interference claim.  The court also rejected P&G's attempt to add an additional product disparagement claim.   In so doing, the district court stated that "[P&G's] suits and claims for . . . violation of Section 43(a) of the Lanham Act, negligent supervision, and vicarious liability, may proceed as outlined in the second amended complaint." *Id.* at 1110.  The district court also notified P&G that "any further amendments to the second amended complaint must be sought through a motion to amend." *Id.* at 1110-11.  P&G sought neither to further amend its complaint, nor to appeal this ruling.

Curiously, P&G insists that when, in *P&G I*, we reversed the district court's dismissal for failure to state a claim for tortious interference, we revived the tortious interference claim as pled in P&G's far-reaching Third Amended Complaint, also revitalizing P&G's attendant product disparagement claims.  We disagree.  By amending its Third Amended Complaint, P&G attempted to evade

the clear instruction of the district court to amend only one particular count of its complaint (the tortious interference claim). P&G has not appealed the district court's limited grant of leave to amend, and we cannot condone its attempt to avoid the implication of that ruling. As indicated above, in *P&G I*, this court rather generously supplied P&G with its only viable Lanham Act claim, specifically a commercial activities claim under § 43(a). In contesting the district court's application of our mandate, P&G has unremittingly sought to relitigate and reassert previously adjudicated issues. *See United States v. Connell*, 6 F.3d 27, 30 (1st Cir. 1993) (declaring that "litigants should not ordinarily be allowed to take serial bites at the appellate apple").

### 5. Failure to allow further discovery

Lastly, P&G contends that the district court erred when it failed to give P&G the requisite notice that it should present evidence on the factual issue of whether Amway knew or had reason to know that the Defendant Distributors were making false statements about P&G's commercial activities. P&G maintains that the district court erred in sua sponte converting the issue of Amway's status as a party into a summary judgment motion. P&G purports to have been "blindsided by the district court's unwarranted rush to judgment." Aplt's Br. at 38. This argument is unsubstantiated by the record.

After remand, and at P&G's request, the district court set a briefing

-22-

schedule and heard further argument on this issue. Both parties submitted supplemental briefs as to the legal issue of whether any claim against Amway might survive the remand. P&G now insists that it should have been able to present further evidence at this time, evidence that was relevant to previously asserted and unsuccessfully litigated issues.

"While the practice of granting summary judgment sua sponte is not favored," we hold that any alleged lack of notice was not prejudicial to P&G. *Scull v. New Mexico,* 236 F.3d 588, 600-01 (10th Cir. 2000). P&G is merely seeking to reargue issues we have already decided. *Cf. Hand v. Matchett*, 957 F.2d 791, 794 n.2 (10th Cir. 1992) (concluding that the district court's sua sponte ruling on summary judgment motion was proper when the parties had had adequate opportunity to address all pertinent issues). No further factfinding or discovery was needed for the district court to determine whether Amway remained as a party after the remand. *Cf. Barber*, 841 F.3d at 1070 (holding that the "district court violated the mandate rule" where appellate court remanded for "resolution of a narrow factual issue," and the district court "reopened the case to accept the records of and testimony concerning a number of [witnesses] not mentioned in this court's prior opinion and ostensibly not a part of the first trial") (internal quotation marks omitted). As we have noted, the "district court on remand is free to pass upon any issue which was not expressly or impliedly

disposed of on appeal." *Newball*, 803 F.2d at 826.

### III. CONCLUSION

In dismissing all of P&G's claims against Amway, the district court did not deviate from our mandate. *See Barber,* 841 F.2d at 1070. Instead, the district court merely decided issues that were necessarily implied by our mandate. *See Wyler Summit Partnership*, 235 F.3d at 1193.

We remind P&G that the mandate rule is an "important corollary" of the law of the case doctrine in seeking to preserve the finality of judgments, to prevent "continued re-argument of issues already decided, . . . and to preserve scarce court resources." *Huffman v. Saul Holdings Ltd. Partnership*, 262 F.3d 1128, 1132 (10th Cir. 2001) (applying law of the case doctrine) (internal quotation marks and citations omitted); *United States v. Triangle Oil,* 277 F.3d 1251, 1259 (10th Cir. 2002) ("Courts use law of the case to promote decisional finality and rely on it to prevent relitigation of an issue already decided in prior proceedings of the same case.") (internal quotation marks omitted). Throughout this and its related protracted and duplicative litigation, P&G has tried to evade the law of the case doctrine, and has squandered scarce judicial resources.

Accordingly, we conclude that the district court appropriately examined and applied our mandate when it determined that P&G's claims against Amway did

-24-

not survive. The district court carefully examined the pleadings and the elements of each claim, and in the interest of preserving judicial resources and avoiding duplicative arguments, the court properly rejected P&G's contentions that: (1) a federal vicarious liability claim survived *P&G I*; (2) its belated contributory infringement claim against Amway could survive summary judgment; (3) its tortious interference claim raised a material disputed issue of fact as to Amway's liability; (4) its operative complaint was its Third Amended Complaint; and (5) it was blindsided by the district court's refusal to permit further discovery. We therefore AFFIRM the ruling of the district court.