**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JACK J. GRYNBERG, Named as
United States of America, ex rel.,

      Plaintiff-Appellee,

 v.

PRAXAIR, INC.,

      Defendant-Appellant,

NIELSON & ASSOCIATES, INC.,

      Defendant.

No. 05-1372
(D.C. No. 98-CV-00016-WYD)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BARRETT**, **McKAY**, and **BALDOCK**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant-appellant Praxair, Inc. (Praxair) appeals the order entered by the district court denying its motion to recover attorneys' fees and expenses under 31 U.S.C. § 3730(d)(4). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude that the district court did not abuse its discretion in denying Praxair's request for fees and expenses, and we affirm.

**A. Background Regarding the Underlying *Qui Tam* Action.**

Plaintiff-appellee Jack J. Grynberg (Grynberg) filed this *qui tam* action under the False Claims Act (FCA) against Praxair and defendant Nielson & Associates, Inc. (Nielson). Grynberg claimed that defendants knowingly presented or caused to be presented false valuations of royalties owed to the federal government for carbon dioxide ($CO_2$) production in violation of 31 U.S.C. § 3729(a)(7).[1]

In a prior appeal to this court, another panel of this court affirmed the district court's entry of summary judgment in favor of Praxair and Nielson on all of Grynberg's claims. In that appeal, the panel described the factual background of this case as follows:

---

[1] Section 3729(a)(7) extends liability to any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7). "This subsection has been referred to as the 'reverse false claims provision' of the FCA." *United States ex rel. Aakhus v. Dyncorp, Inc.*, 136 F.3d 676, 681-82 (10th Cir. 1998) (quotation omitted).

Defendant Nielson, a small, privately held Wyoming corporation, produces and sells oil, hydrocarbon liquids and $CO_2$ from the "McCallum" fields in northern Colorado under leases with the United States Government. Defendant Praxair owns and operates an industrial plant designed to purify and convert Nielson's raw $CO_2$ into liquid suitable for beverages, food processing and other uses. The valuation method for $CO_2$ royalties owed to the Government is based on an "Agreement for the Sale of Carbon Dioxide" (Agreement) executed in June, 1983 between Conoco, Inc. (Conoco) (who later sold to Nielson) and Praxair's predecessor, Liquid Carbonic Corporation (Liquid Carbonic). The current Agreement between Nielson and Praxair remains unchanged from the 1983 version in all relevant aspects. Grynberg alleges Nielson and Praxair perpetuated Conoco and Liquid Carbonic's practice of submitting reports misstating the valuation of $CO_2$ production, resulting in an underpayment of royalties owed to the Government.

*United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1042 (10th Cir. 2004), *cert. denied*, 125 S. Ct. 2964 (2005).

As the district court explained in its summary judgment order, "[i]n an Amended Complaint . . ., Grynberg modified his allegations regarding gas undervaluing practices and added allegations that gas volume was underreported." *United States ex rel. Grynberg v. Praxair, Inc.*, 207 F. Supp. 2d 1163, 1165 (D. Colo. 2001). The case then proceeded as follows:

Pursuant to the [FCA], Grynberg's Complaint was filed under seal and remained sealed until . . . the U.S. Department of Justice advised the Court that the Government would not intervene. . . . At that time, the seal was lifted and the Amended Complaint was served on the defendants.

[] After this Court denied Motions to Dismiss filed by both Praxair and Nielson, the parties engaged in lengthy discovery proceedings. Thereafter, . . . the Court heard oral argument on summary judgment motions filed by both Praxair and Nielson. Exhaustive briefs and

-3-

exhibit submissions by all parties [. . .] provided the Court with an extensive factual record of the practices at issue in this case, as well as the Government's knowledge of and involvement in the defendants' activities.

*Id.* at 1165-66 (footnote omitted).

Based on the extensive factual record and arguments submitted by the parties, the district court subsequently granted summary judgment in favor of Praxair and Nielson on three different grounds, holding that: (1) Grynberg failed to put forth evidence showing that either defendant knowingly made false statements to the government, *id.* at 1177-81; (2) Grynberg's claims were statutorily barred because they were based on information and conduct known to the Government prior to 1986, *id.* at 1181-82; and (3) the court lacked subject matter jurisdiction over Grynberg's claims because his *qui tam* action was based on publicly disclosed allegations or transactions and he was not an original source of the information, *id.* at 1182-86.

In its summary judgment order, the district court also separately addressed Grynberg's claims against Praxair, concluding that "Grynberg's claims against Praxair must also be rejected because he has not shown that Praxair made any false statements to reduce obligations to the U.S. government." *Id.* at 1186. Specifically, the district court made the following factual findings and legal determinations concerning Grynberg's claims against Praxair:

All royalty reports and payments were prepared and submitted by Conoco and Nielson, without any involvement by Praxair [or its predecessor, Liquid Carbonic]. Praxair's only role was providing accurate information (*i.e.* tailgate volume measurements, oxygen use

volumes, sales price data) pursuant to [its] Agreement [with Nielson]. Because it was not the lessee, it had no royalty obligations to the government and its economic position was fixed by the Agreement, regardless of the royalties Conoco and Nielson paid. The only alleged misrepresentations Grynberg assigns to Praxair and [Liquid Carbonic] are the 1992 report that ice plant $CO_2$ vapor would be recycled and a 1996 under estimate of $CO_2$ losses associated with the plant. Given that (i) the challenged royalty practices were approved [by the government] both before and after these representations, (ii) the government knew the extent of venting [losses] based on knowledge of both wellhead and tailgate volumes and (iii) the government approved the venting and royalty practices even after learning that ice plant vapors were not being recycled, there is no basis for any inference that these [Liquid Carbonic] and Praxair statements were made for the purpose of reducing royalty obligations. Moreover, Grynberg argues that wellhead volumes and an alternative $CO_2$ market value should have been used to calculate royalties. The wellhead measurements and the decision of what value to use when calculating royalties were always controlled by Conoco and Nielson. Praxair was thus totally irrelevant to the royalty underpayments that Grynberg alleges.

*Id.*

As noted above, Grynberg subsequently appealed to this court, and another panel of this court affirmed the district court's conclusion that it lacked subject matter jurisdiction over Grynberg's FCA claims. *See Grynberg*, 389 F.3d at 1042, 1052, 1054 (holding that Grynberg's complaint was based on publicly disclosed information under 31 U.S.C. § 3730(e)(4)(A), and that the character of his investigation was insufficient to qualify him as an original source of the information under § 3730(e)(4)(B)). The panel "therefore [did] not reach the remainder of the issues presented in Grynberg's appeal." *Id.* at 1042.

-5-

**B. Praxair's Motion to Recover Attorneys' Fees and Expenses.**

A defendant who is sued under the FCA may be awarded reasonable attorneys' fees and expenses "if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). After the district court entered summary judgment in its favor, Praxair filed a motion in the district court to recover its attorneys' fees and expenses under § 3730(d)(4), arguing that "Grynberg's persistence in this lawsuit was clearly frivolous after it became apparent Praxair [and Liquid Carbonic] had no responsibility or involvement with [Nielson's and] Conoco's royalty payments." *Grynberg*, 389 F.3d at 1058. The district court summarily denied Praxair's motion, stating only that, "[w]hile the claims in this case were properly dismissed on summary judgment, review of the record in this case leaves me unable to find that [Grynberg's] Complaint was clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment." *Id.* (citation omitted).

In the prior appeal to this court, Praxair cross-appealed the denial of its motion to recover attorneys' fees and expenses. *Id.* at 1042. With regard to Praxair's cross-appeal, the panel first determined that the district court had subject matter jurisdiction to award attorneys' fees under § 3730(d)(4) even though the underlying FCA action had been dismissed for lack of subject matter

jurisdiction. *Id*. at 1055-58. The panel then reversed the district court's denial of Praxair's motion, and the panel offered two reasons to support its reversal. First, the panel noted that the district court "did not hold a hearing on this matter and the truncated order provides no guidance as to whether Praxair's theory [under § 3730(d)(4)] was considered." *Id*. at 1058-59.

Second, after summarizing the factual findings of the district court which demonstrated that Praxair was "irrelevant" to the alleged royalty underpayments, the panel stated that "[b]ecause the timing of Grynberg's discovery of these facts is contrary to a finding that he could reasonably believe his claim against Praxair had a scintilla of merit throughout the litigation, we must remand to the district court for further discussion and findings." *Id*. at 1059. In the "Conclusion" section of its opinion, the panel then concluded that "the district court failed to provide sufficient information to afford a review of the denial of attorney fees." *Id*. The panel therefore remanded the case to the district court "for further proceedings consistent with this opinion." *Id*.

**C. The District Court's Remand Decision.**

After this matter was remanded to the district court, Praxair filed a renewed motion to recover attorneys' fees and expenses under § 3730(d)(4);[2] Grynberg filed a response to the motion; and Praxair filed a reply. Both sides also

---

[2] In its renewed motion, Praxair requested that the district court award it $1,414,195.42 in attorneys' fees and expenses. *See* Aplt. App. 126.

submitted extensive documentation to the district court to support their respective positions. In addition, the district court held a hearing on Praxair's motion. After considering the parties' briefs and the arguments of counsel at the hearing, the district court entered a written order denying Praxair's motion.

In its order, the district court summarized the parties' arguments and the issues before it as follows:

> Following remand, . . . Praxair filed a second Motion to Recover Attorneys' Fees and Expenses asserting that "[f]rom the outset, this action by . . . Grynberg . . . has been []clearly frivolous, clearly vexatious, or brought primarily for the purpose of harassment," because Grynberg knew, even before filing suit, that Defendant Nielson was the party responsible for measuring gas volume and calculating royalty payments, and this knowledge was "repeatedly ratified during discovery and pretrial proceedings." In response, Grynberg contends that his prefiling investigation led him to reasonably believe that Praxair caused Nielson to calculate and pay royalties incorrectly, and that it was not until this Court entered summary judgment that "the factual and legal issues of whether Praxair had assisted in a false filing were resolved."
>
> . . . .
>
> As an initial matter, the Court finds that there is nothing in the record to suggest that Plaintiff brought this case primarily for purposes of harassment. Therefore, the question that remains is whether the action was brought in a way that was clearly vexatious or clearly frivolous. Grynberg's overall theory of the case derived from his belief that royalties should have been paid using [Nielson's] wellhead volumes (gross proceeds), rather than [Praxair's] tailgate volumes (net proceeds after processing). As this Court found in its Order granting summary judgment, Praxair had no royalty obligations to the government, all royalty reports and payments were prepared and submitted by Conoco and Nielson, and Praxair's only role was to provide tailgate volume measurements, oxygen use volumes, and sales price data pursuant to its Agreement with

-8-

> Nielson. However, Grynberg's claim against Praxair was not based on allegations that Praxair, itself, filed false reports with the United States, but rather that Praxair "caused" the false filings because Nielson and Praxair acted in concert and "systematically understated the volume and the value of the natural $CO_2$ gas produced from the McCallum Field."

Aplt. App. at 427, 428-29.

The district court then analyzed Grynberg's claims from two points in time, looking first at the "time [Grynberg] filed this action," and next at "the Summary Judgment phase." *Id.* at 429.

> Grynberg contends that he based his belief that Praxair was providing inaccurate price information to Nielson on his knowledge of $CO_2$ market rates, his FOIA request which stated that the government required that all excess $CO_2$ be recycled (and not vented), as well as information that Praxair was paying Nielson "roughly 10% of the price quote Grynberg received from Praxair." Thus, I find that at the time he filed this action, Grynberg had sufficient facts in his possession to state a claim against Praxair that was neither groundless or without foundation.
>
> At the Summary Judgment phase, Grynberg continued to assert that royalties should have been paid on the basis of [Nielson's] wellhead volumes, and further claimed that the government approved payment based on tailgate information only because of various misrepresentations by Defendants, including Praxair's "statement that $CO_2$ vapor from the dry ice plant would be captured and recycled and [] statements regarding the extent of $CO_2$ gas that would not be included in royalty calculations as a consequence of tailgate measurement." *Grynberg*, 207 F. Supp. 2d at 1175, ¶ 50. In deciding the Motion for Summary Judgment, the Court clearly disagreed with the arguments made by Grynberg and found no basis for his assertion that Praxair's statements "were made for the purpose of reducing royalty obligations." *Grynberg*, 207 F. Supp. 2d at 1186. However, simply because the Court ultimately concluded that Grynberg could not show material facts in dispute, Grynberg had at least a reasonable basis to believe that he could pursue his claim

against Praxair and his arguments at the summary judgment phase were not wholly without merit. Accordingly, I cannot find, based on the record before me that Grynberg's claims were clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

*Id.* at 429-30.

We agree with the district court that, "at the time he filed this action, Grynberg had sufficient facts . . . to state a claim against Praxair that was neither groundless or without foundation." *Id.* at 429. The much closer issue is whether the same can be said of the summary judgment phase, and we address that issue below.

**D. Alleged Violation of the "Mandate Rule."**

Before addressing the summary judgment evidence that was before the district court, we need to address Praxair's argument that the district court's decision on remand was in violation of the mandate set forth in this court's prior opinion. *See* Aplt. Br. at 26-32. According to Praxair, this court's prior opinion established, as a matter of law, that Grynberg knew his claims were clearly frivolous "once [he] discovered Praxair's lack of involvement in royalty calculation, reporting and payment, and its consequent irrelevance to the alleged underpayments." *Id.* at 26-27. Praxair thus argues that the only issue before the district court on remand was "the *temporal* factual determination of *when* Grynberg made this discovery." *Id.* at 27.

We disagree. "Although a district court is bound to follow the mandate, and the mandate controls all matters within its scope, . . . a district court on remand is free to pass upon any issue which was not expressly or impliedly disposed of on appeal." *Proctor & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003) (quotation omitted); *see also Hicks v. Gates Rubber Co.*, 928 F.2d 966, 971 (10th Cir. 1991) (noting that with a general mandate, the district court "is free to decide anything not foreclosed by the mandate") (quotation omitted). Here, while this court's prior opinion specifically noted that "the timing of Grynberg's discovery of [the facts enumerated herein] is contrary to a finding that he could reasonably believe his claim against Praxair had a scintilla of merit throughout the litigation," *Grynberg*, 389 F.3d at 1059, the panel did not explicitly limit the district court to considering only the "timing" issue on remand. Instead, the panel remanded in general terms "for further discussion and findings." *Id.* We therefore reject Praxair's argument that the district court violated this court's mandate.

**E. Analysis of the District Court's Remand Decision.**

In this court's prior opinion, the panel set forth the standards that govern our review in this case. First, "[w]e review the district court's decision to award attorney fees for an abuse of discretion . . . ." *Grynberg*, 389 F.3d at 1055. "Under the abuse of discretion standard, the decision of a trial court will not be disturbed unless the appellate court has a definite and firm conviction that the

-11-

lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* at 1058 (quotation omitted).

Second, "[w]hen determining whether a plaintiff should be ordered to pay the defendant's attorney fees, we apply the standard enunciated in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 . . . (1978)." *Id.* Under this standard:

> [t]he plaintiff's action must be meritless in the sense that it is groundless or without foundation. The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees. . . . [A] plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. . . .

*Id.* (quotation omitted).

Finally, the panel "recognize[d] that the *Christiansberg* standard is a difficult standard to meet." *Id.* at 1059 (quotation omitted). As a result, the panel emphasized "that rarely will a case be sufficiently frivolous to justify imposing attorney fees on a plaintiff." *Id.* (quotation omitted).

Having reviewed the lengthy appellate briefs submitted by the parties, we must compliment counsel for both sides on the quality of the writing and arguments. That said, we also note that the parties' respective positions are succinctly set forth in the oral arguments advanced by counsel at the hearing that was held before the district court on remand. In particular, during the hearing, *see* Aplt. App. at 338-66, counsel for Praxair argued very persuasively that Grynberg knew from day one of this litigation that, as the district court found,

-12-

"Praxair was . . . totally irrelevant to the [alleged] royalty underpayments."
*Grynberg*, 207 F. Supp. 2d at 1186.

As the district court found, however, the summary judgment record contains independent evidence that arguably supports Grynberg's claim that Praxair itself (or its predecessor, Liquid Carbonic) made misrepresentations to the government for the purpose of understating the amount of $CO_2$ that was lost during processing at its plant. *See* Aplt. App. at 429. Thus, even if the district court was correct when it determined that "there is no basis for any inference that these [Liquid Carbonic] and Praxair statements were made for the purpose of reducing royalty obligations," *Grynberg*, 207 F. Supp. 2d at 1186, the statements arguably facilitated the alleged understating of $CO_2$ volume, and thereby "caused" a reduction in Nielson's royalty obligations.

As articulated by Grynberg's counsel during the hearing before the district court, *see* Aplt. App. at 381-93, Grynberg's allegations concerning Praxair's and Liquid Carbonic's alleged misrepresentations are based on three documents contained in the summary judgment record, and the district court discussed each of the documents in its summary judgment order. The first document was created by Liquid Carbonic in 1992.

> In 1992, [Liquid Carbonic] added a dry ice manufacturing facility to its plant. Because the plant is on land leased from the Federal government, [Liquid Carbonate] sought permission from the [Bureau of Land Management] to construct that facility. In a September 1, 1992, memo, [Liquid Carbonate] advised (among other things) that

-13-

$CO_2$ vapor released from the dry ice machinery would be piped back into the main $CO_2$ plant. There is no evidence that this was not [Liquid Carbonate's] intent when this statement was made. *The plan to recycle the* $CO_2$ *vapor, however, was later abandoned as uneconomical.*

*Grynberg*, 207 F. Supp. 2d at 1169 (emphasis added); *see also* Aplee. Supp. App., Tab 11, Att. 3.

The second document was created in October 1996 by a representative of Nielson, and the document memorialized certain oral statements that were made by Praxair during that time period.

On August 22, 1996, [the Department of Interior's Minerals Management Service] issued to Conoco and Nielson an "Order to Comply" pursuant to 30 C.F.R. § 206.154, charging them with having incorrectly reported production and royalties from McCallum wells. . . .

. . . .

[] BLM representatives met subsequently with representatives of Praxair, Nielson and Conoco. . . . BLM's questions and concerns about the "tailgate" measurement of gas volumes for royalty purposes were addressed at that meeting. In an October 21, 1996, follow-up letter to BLM, Nielson's Chief Operating Officer noted that at the meeting Praxair had described the operation of its plant, *the use of* $CO_2$ *gas in its processes that result "in a 20-30% reduction in the eventual quantity of pure* $CO_2$ *available for sale"*, and the variables that can influence the extent of the $CO_2$ used in the plant processing.

*Grynberg*, 207 F. Supp. 2d at 1170 (emphasis added); *see also* Aplee. Supp. App., Tab 35.

The third document was described by the district court as an "'Extension Agreement' covering Nielson's continued sale of $CO_2$ to Praxair from the McCallum fields," *Grynberg*, 207 F. Supp. 2d at 1172, and it was apparently executed in May 2000, *see* Aplee. Supp. App., Tab 37. As further described by the district court:

> Although the Extension Agreement is substantially similar to the Agreement originally entered into between Conoco and [Liquid Carbonic], it is modified to account for various changes in actual practices (*i.e.* addition of dry ice production, reduction in returned gas volumes, recognition of venting losses, etc.). Noting the pending Grynberg action, Nielson asked that MMS confirm its continuing approval of Nielson's $CO_2$ production, sales and royalty activity, as reflected in the Extension Agreement. . . . The Extension Agreement included the following provision[]:

> 4.4. During the production of Finished Product, Praxair's Plant produces vent gases and both parties agree that under normal operating conditions *there may be significant and substantial losses of the* $CO_2$ *stream incurred in order to produce Finished Product.* The amount of losses will vary with the composition of the $CO_2$ stream, *but they may from time to time exceed fifty percent (50%) of the volume of the* $CO_2$ *stream which is delivered by Seller to Praxair's Plant*[.]

*Grynberg*, 207 F. Supp. 2d at 1172 (emphasis added).

Because it is undisputed that the government was eventually apprised of and approved the $CO_2$ losses that were occurring during processing at Praxair's plant, *id.* at 1169-72, 1186, we agree with Praxair that these documents were ultimately of limited value to Grynberg. On the other hand, the documents provided at least some evidence to support Grynberg's claim that Praxair

-15-

facilitated Nielson's alleged understating of $CO_2$ royalties by misrepresenting the extent of the $CO_2$ losses that were occurring during processing at its plant. Specifically, as found by the district court on remand, *see* Aplt. App. at 429-30, these documents arguably show that Praxair or its predecessor assisted Nielson in obtaining governmental approval for Nielson to pay royalties based on tailgate volume information (*i.e.*, the volume of processed $CO_2$ produced by Praxair or its predecessor) by: (1) affirmatively representing that all $CO_2$ losses which occurred during dry ice processing would be recycled, when that turned out not to be the case; and (2) understating overall processing losses during the years 1996 to 2000.

As set forth above, our review of the district court's denial of Praxair's request for an award of attorneys' fees and expenses is tightly constrained by the governing standards under § 3730(d)(4) and the abuse of discretion standard of review. *See Grynberg*, 389 F.3d at 1058-59. As a result, while we agree with Praxair that Grynberg failed to prove that the above-referenced statements were made with a fraudulent intent to deceive the government and thereby reduce Nielson's royalty obligations, we conclude that the district court did not abuse its discretion when it determined that the claims against Praxair were not clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

Accordingly, the district court's order denying Praxair's motion to recover attorneys' fees and expenses is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge