**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SOLIDFX, LLC,

      Plaintiff - Appellant/
     Cross-Appellee,

v.

JEPPESEN SANDERSON, INC.,

      Defendant - Appellee/
     Cross-Appellant.

No. 18-1082 & 19-1029
(D.C. No. 1:11-CV-01468-WJM-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

Plaintiff SOLIDFX, LCC (SOLIDFX), a software development company, filed

this action against Jeppesen Sanderson, Inc. (Jeppesen), a subsidiary of Boeing that

develops aviation terminal charts. SOLIDFX asserted antitrust, breach of contract, and

tort claims. The district court granted summary judgment in favor of Jeppesen on the

antitrust claims, but allowed the remaining claims to proceed to trial. A jury found in

favor of SOLIDFX on the remaining claims and awarded damages in excess of $43

million dollars. Jeppesen appealed, arguing that the parties' contract precluded

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

SOLIDFX from recovering lost profits on its breach of contract claims. SOLIDFX cross-appealed the district court's summary judgment ruling on the antitrust claims. This court affirmed the district court's summary judgment ruling on the antitrust claims, but reversed and vacated the jury's award of lost profits. *SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, 841 F.3d 827, 831 (10th Cir. 2016) (*SOLIDFX I*).

On remand, the district court denied SOLIDFX's Rule 60(b) motion to reconsider the issue of whether the jury's findings of willful and wanton conduct on the part of Jeppesen precluded enforcement of the damages limitation in the parties' contract. The district court also ruled on two cost-related motions filed by Jeppesen. The district court then entered a second amended judgment. Jeppesen filed a Rule 59(e) motion to amend, correct, or modify the second amended judgment to state that judgment had been entered in Jeppesen's favor on SOLIDFX's fraud-related claims. The district court denied that motion.

Both parties now appeal. SOLIDFX argues in its appeal that the district court erred in denying its Rule 60(b) motion. Jeppesen argues in its cross-appeal that the district court erred in denying its Rule 59(e) motion. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm the district court's denial of SOLIDFX's motion, but reverse the district court's denial of Jeppesen's motion and remand with directions to modify the judgment to state that final judgment is entered in favor of Jeppesen on SOLIDFX's claims for fraudulent misrepresentation and fraudulent concealment.

2

I

A

In *SOLIDFX I*, this court outlined the factual history of the parties' dispute:

Jeppesen creates terminal charts, which provide pilots with the information necessary to navigate and land at a specific airport. Jeppesen gathers information from over 220 countries, creates its charts, updates them periodically, and then sells the charts and updates to customers. Jeppesen holds copyrights for portions of its charts, which use a proprietary format, including unique symbology, colors, fonts, and layout. Historically, pilots used paper terminal charts, but demand has risen for electronic alternatives to the bulkier hard-copy versions.

In November 2008, Jeppesen contacted SOLIDFX to discuss options for making Jeppesen's terminal charts available for electronic viewing. SOLIDFX suggested using an e-reader device known as the iRex and demonstrated a prototype to Jeppesen. The parties then began negotiating a License and Cooperation Agreement ("License Agreement") under which Jeppesen would waive its standard licensing fee and grant SOLIDFX access to Jeppesen Integration Toolkits, which are proprietary products that facilitate the integration of Jeppesen's terminal charts into third-party systems. In exchange, SOLIDFX would create a "data management reader solution that works in conjunction with an e-book viewer, as modified to access, utilize and display Jeppesen Data."

In July 2009, before the License Agreement had been finalized, Jeppesen began providing toolkits to SOLIDFX and SOLIDFX began selling iRex devices "embedded with [SOLIDFX's] software and pre-loaded with Jeppesen's charts." The parties then finalized and executed the License Agreement on December 31, 2009.

In January 2010, Apple, Inc. announced the first version of its iPad product. Shortly after the announcement, SOLIDFX registered with Apple as a software application (app) developer and requested the necessary toolkit from Jeppesen to develop an iPad app. Jeppesen did not provide the toolkit. Rather, in May 2010, Jeppesen announced it had created its own iPad app, which it offered to its customers at no additional cost beyond their terminal chart subscription fee.

3

841 F.3d at 831.

This court also recounted the procedural history of the case leading up to and including the trial:

> Upon learning Jeppesen had developed its own iPad app, SOLIDFX sued Jeppesen for antitrust violations, breach of contract, and various torts. The district court granted summary judgment for Jeppesen on the antitrust claims but denied summary judgment on the remaining claims. In particular, the district court rejected Jeppesen's argument that the License Agreement precluded the recovery of lost profits. The court instead concluded the agreement was ambiguous as to whether all lost profits were barred and indicated it would be up to the jury to decide what types of damages the parties intended to exclude.
>
> During trial, both parties moved for a legal determination on the recoverability of lost profits under the License Agreement. The district court reconsidered its prior ruling and concluded the License Agreement excluded only lost profits that also qualified as consequential damages. As a result, it held that lost profits falling within the definition of direct damages could be recovered. The district court further determined that lost profits from two of SOLIDFX's apps qualified as direct damages, while lost profits from two other apps were properly classified as consequential damages.
>
> After an eight-day trial, the jury found for SOLIDFX on all claims and awarded it $43,096,003 in damages. The award included $20,922,500 in lost profits from SOLIDFX's projected iPad app sales during the initial term of the contract; $21,385,500 for lost business value assuming the parties would have allowed the License Agreement to renew for an additional five years; $615,000 for lost profits attributable to Jeppesen's refusal to provide a toolkit for tailored terminal charts for the iRex device; $1 for breach of the duty of good faith and fair dealing; $173,000 for fraudulent misrepresentation; $1 for fraudulent concealment; and $1 for intentional interference with business relations.

*Id.* at 831–32 (footnotes omitted).

4

Jeppesen filed a post-evidence Rule 50(a) motion arguing, in part, that it was entitled to judgment as a matter of law (JMOL) on SOLIDFX's tort claims because all of those claims were "barred by Colorado's economic loss rule." ECF No. 341 at 2. In its written reply brief in support of the motion, Jeppesen focused its economic loss arguments on the jury's fraud verdict. ECF No. 363 at 7–10. The district court ultimately granted JMOL in Jeppesen's favor with respect to the jury's $173,000 verdict on the fraudulent misrepresentation claim. ECF No. 369 at 10-12. The district court's written order did not, however, discuss Jeppesen's economic loss argument with respect to the remaining tort claims.

On June 26, 2014, the district court entered final judgment in the case. The final judgment stated, in pertinent part: "The portion of the jury's verdict awarding monetary damages for fraudulent misrepresentation is VACATED." ECF No. 370 at 2. The final judgment did not, however, otherwise mention the fraudulent misrepresentation or fraudulent concealment claims, nor did it expressly enter judgment in favor of either party on any of SOLIDFX's claims. The district court subsequently entered an amended judgment for reasons that are not relevant to the current appeals. ECF No. 407. The amended judgment made no mention of any of SOLIDFX's claims.

Jeppesen filed a Rule 50(b) motion asking the district court to confirm "that its reasoning when vacating the $173,000 award for fraudulent misrepresentation also applied to the fraudulent concealment claim, for which the jury awarded $1 in nominal damages." ECF No. 377 at 2. The district court issued an order granting Jeppesen's Rule

5

50(b) motion and clarifying that its prior ruling "applie[d] to both Plaintiff's claim for fraudulent misrepresentation and the claim for fraudulent concealment." ECF No. 408 at 9. The district court explained: "Plaintiff failed to show that Defendant owed it a legal duty that was independent of any contractual duty and, therefore, the economic loss rule bar[red] both fraud claims." *Id.* The district court also noted: "Omission of the fraudulent concealment claim was simply an oversight, which the Court will now correct." *Id.* "Accordingly," the district court stated, it determined "that Plaintiff [wa]s not entitled to collect damages on its fraudulent concealment claim, and the jury's award of $1 on that claim is vacated." *Id.*

B

Jeppesen filed an appeal challenging "the district court's ruling that SOLIDFX could recover lost profits on its contract claims." *SOLIDFX I*, 841 F.3d at 830. SOLIDFX, for its part, appealed the court's grant of summary judgment regarding its antitrust claims.

In *SOLIDFX I*, this court affirmed the district court's grant of summary judgment on SOLIDFX's antitrust claims. *Id.* at 831. As to Jeppesen's appeal, this court reversed, holding that the contract unambiguously precluded the recovery of lost profits, irrespective of whether they were direct or consequential damages. *Id.* at 843. This court further stated that even if the agreement could be read to allow the recovery of direct lost profits, the jury's award constituted non-recoverable consequential damages. *Id.* Because this court concluded that the contract provision precluding lost profits was

6

enforceable, it vacated the portions of the jury's verdict that awarded SOLIDFX damages for lost profits. *Id.* at 838, 843.

C

On remand, Jeppesen filed a motion to award taxable costs on appeal and a motion to vacate the original award of costs to SOLIDFX. ECF Nos. 439, 440.

SOLIDFX filed what it described as a motion to reconsider pursuant to Fed. R. Civ. P. 60(b)(5) and (6). In its motion, SOLIDFX asked the district court to "reconsider whether the jury's findings that support[ed] willful and wanton conduct by [Jeppesen] preclude[d] enforcement of the damages limitation in the parties' agreement." ECF No. 441 at 1. In support of that request, SOLIDFX stated:

> Prior to the jury's verdict, the Court held that the damages limitation could be enforced, even if Jeppesen's misconduct was shown to be willful and wanton, because the provision did not unconscionably limit SOLIDFX's recovery of direct lost profits. But on appeal, the Tenth Circuit reversed that conclusion and vacated all lost profits damages ($43 million awarded by the jury) due to the damages limitation. The panel, however, did not address SOLIDFX's arguments concerning the enforceability of the damages limitation in light of Jeppesen's willful and wanton conduct. As such, and in view of the jury's finding that Jeppesen intentionally and fraudulently breached in bad faith, this Court should find the damages limitation unenforceable and reinstate the jury award.

*Id.*

On February 9, 2018, the district court issued an order denying SOLIDFX's motion to reconsider. ECF No. 464. On February 12, 2018, the district court issued an order granting Jeppesen's motion to award taxable costs on appeal and granting in part

7

and denying in part Jeppesen's motion to vacate the original award of costs to SOLIDFX.

ECF No. 464.

On February 13, 2018, the district court entered the Second Amended Judgment.

ECF No. 465. The Second Amended Judgment stated, in pertinent part:

> a. The jury's findings of liability remain intact as to all Plaintiff's claims that were submitted to the jury, and Plaintiff remains entitled to judgment against Defendant as to liability on all claims for breach of contract, for breach of the duty of good faith and fair dealing, for fraudulent misrepresentation, for fraudulent concealment, and for intentional interference with business relations;
>
> b. The prior award of damages on Plaintiff's breach of contract claims is VACATED in its entirety pursuant to the Tenth Circuit's mandate, thus Plaintiff is entitled to no damages on its breach of contract claims . . . .

*Id.* at 2.

SOLIDFX filed a notice of appeal on March 9, 2018.

On that same date, Jeppesen filed a Rule 59(e) motion to amend, correct, or modify the Second Amended Judgment. In that motion, Jeppesen asked the district court "to correct a portion of subparagraph 4(a) that" it alleged was "inconsistent with [the district court's] prior rulings in the case and in error." ECF No. 466 at 1. "Specifically, Jeppesen ask[ed]" the district court to "amend subparagraph 4(a) to remove the language providing that the jury's findings of liability remain[ed] intact, and Plaintiff remain[ed] entitled to judgment against Jeppesen, 'for fraudulent misrepresentation[ and] for fraudulent concealment.'" *Id.* (quoting ECF No. 465 at 2).

8

On December 28, 2018, the district court issued a written order denying Jeppesen's motion. The district court acknowledged, as asserted by Jeppesen, "that the Second Amended Judgment [wa]s the first judgment in which the Court explicitly stated that the jury's liability findings as to fraudulent misrepresentation and fraudulent concealment . . . remain[ed] intact." ECF No. 479 at 9. But the district court rejected Jeppesen's assertion that the district court had "fully and completely vacate[d] [the] fraud claims." *Id.* Instead, the district court stated: "Jeppesen *asked* for judgment as a matter of law on the fraud-related claims but the Court *only* vacated the damages awarded under the relevant sections of the jury verdict." *Id.* (emphasis in original). The district court further stated: "As should have been obvious to Jeppesen at the time, the Court did not enter judgment in Jeppesen's favor and against [SOLIDFX] on any claim." *Id.* Ultimately, the district court concluded that "if [it] erred in vacating damages only instead of entering judgment in Jeppesen's favor, [it] committed that error before the first appeal." *Id.* at 9-10. Because "the first appeal [wa]s concluded," the district court stated, "the mandate rule forbids [it] from revisiting the alleged error." *Id.* at 10.

Jeppesen filed a notice of appeal on January 18, 2019.

## II

We turn first to SOLIDFX's appeal. We review the district court's denial of SOLIDFX's Rule 60(b) motion for abuse of discretion, *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000), but we review its interpretation of the scope of the

*SOLIDFX I* mandate de novo, *Dish Network Corp. v. Arrowood Indem., Co.*, 772 F.3d 856, 864 (10th Cir. 2014).

The mandate rule, which is "[a]n important corollary to the law of the case doctrine, . . . provides that a district court must comply strictly with the mandate rendered by the reviewing court." *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1132 (10th Cir. 2001) (quotations omitted). "[A]n inferior court has no power or authority to deviate from the mandate issued by an appellate court," *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948), which includes all issues "expressly or impliedly disposed of on appeal," *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003) (quotation omitted). This rule "preserve[s] the finality of judgments," "prevent[s] continued re-argument of issues already decided," and "preserve[s] scarce court resources." *Id.* at 1132.

To determine whether the district court strayed from the *SOLIDFX I* mandate, we examine the mandate and compare it to the district court's decision. *See United States v. Walker*, 918 F.3d 1134, 1144 (10th Cir. 2019). A "mandate consists of our instructions to the district court at the conclusion of the opinion, and the entire opinion that preceded those instructions."[1] *Procter & Gamble Co.*, 317 F.3d at 1126. "In interpreting the scope

---

[1] SOLIDFX refers in its briefs to the judgment entered by the Clerk of Court for the Tenth Circuit following the opinion in *SOLIDFX I*. But our precedent regarding the mandate rule addresses only the opinion, not the separate judgment. *See, e.g., Procter & Gamble Co.*, 317 F.3d at 1126 ("mandate consists of our instructions to the district court at the conclusion of the opinion, and the entire opinion that preceded those instructions"

10

of a previous mandate, we look for specific limitations on the district court's discretion."

*Walker*, 918 F.3d at 1144.  "[U]nless the district court's discretion is specifically cabined, it may exercise discretion on what may be heard."  *United States v. West*, 646 F.3d 745, 749 (10th Cir. 2011).

We begin by examining the opinion in *SOLIDFX I*.[2]  The instructions to the district court at the end of the opinion stated:

> For the above reasons, we reverse the district court's interpretation of Section 8.2 and hold that lost profits are not recoverable under the Licens[e] Agreement.  Even if the License Agreement precluded only consequential lost profits, SOLIDFX's damages fall within that exclusion. We accordingly vacate the portions of the jury's verdict that awarded $20,922,500 in lost profits from SOLIDFX's projected iPad app sales during the initial term of the contract; $21,385,500 for lost business value based on anticipated lost profits after the initial contract term; and $615,000 for lost profits for tailored terminal charts for the iRex device.

841 F.3d at 843 (emphasis added).  These instructions clearly "hold that lost profits are not recoverable under the Licens[e] Agreement."  *Id.*  This wording and the analysis that

_____

(emphasis added)).  Unlike the judgment, the opinion contained no remand instructions. Therefore, we decline to accept SOLIDFX's argument that this court expressly contemplated further proceedings on remand.

[2] At the outset, we note that *SOLIDFX I* did not use the words "willful" or "wanton" or explicitly identify SOLIDFX's argument that Jeppesen's willful and wanton misconduct rendered the damages limitation unenforceable.  However, as explained below, upon review of the instructions to the district court and the opinion itself, we ultimately conclude that this argument was "impliedly disposed of on appeal," *Procter & Gamble Co.*, 317 F.3d at 1126 (quotation omitted), and that the district court correctly interpreted our mandate.

preceded it demonstrate that the contract provision again challenged by SOLIDFX in this appeal precludes SOLIDFX from recovering any damages for lost profits.

Because the mandate rule bars re-litigation of issues decided either expressly or impliedly, *see Procter & Gamble Co.*, 317 F.3d at 1126, the analysis in *SOLIDFX I* further supports the conclusion that the mandate foreclosed any reconsideration of the willful-and-wanton argument. This court held "that SOLIDFX was contractually precluded from recovering the amounts awarded for lost profits." *SOLIDFX I*, 841 F.3d at 832. As this court explained, it is because of this holding that it did not reach either of Jeppesen's alternative arguments about the lost profits award: (1) "whether SOLIDFX proved those lost profits with reasonable certainty" and (2) "the admissibility of expert testimony offered by SOLIDFX to establish the amount of its lost profits." *Id.* Had this court not concluded that the damages limitation was enforceable—either because lost profits were permitted under the License Agreement or because Jeppesen's willful and wanton conduct rendered the limitation unenforceable—it would have needed to address these alternative challenges by Jeppesen to the award of lost profits.

Further, this court specifically addressed the enforceability of the damages limitation, not just its general interpretation. This court noted that there "'is no public policy against enforcement of limited liability clauses for abandonment of a contractual obligation, even if deliberate.'" *SOLIDFX I*, 841 F.3d at 837 (quoting *CompuSpa, Inc. v. Int'l Bus. Machs. Corp.*, 228 F. Supp. 2d 613, 626-27 (D. Md. 2002)). Under Colorado law, sophisticated parties allocate risk for themselves. *See Vanderbeek v. Vernon Corp.*,

12

50 P.3d 866, 871 (Colo. 2002) (describing the "fundamental principle of contract law" that "parties must be able to confidently allocate risks and costs during their bargaining without fear that unanticipated liability may arise in the future").

This is precisely what SOLIDFX did when negotiating its License Agreement with Jeppesen, albeit to its eventual detriment. SOLIDFX acceded to the risk of agreeing to the damages limitation, and in return it received the sizeable benefit of Jeppesen waiving its licensing fee. *SOLIDFX I*, 841 F.3d at 837. Both parties agreed to bear the risk of lost profits and forego other damages. *Id.* "'[A]s a general rule, courts will uphold an exculpatory provision in a contract between two established and sophisticated business entities that have negotiated their agreement at arm's length.'" *Id.* (quoting *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1191 (Colo. App. 2008)).

This court further noted in *SOLIDFX I* that the parties' bargain would not have left SOLIDFX without a remedy. *Id.* at 837-38. Even providing for enforcement of the damages limitation, the License Agreement also permitted recovery of reliance damages "incurred when products or services promised under the License Agreement were not provided." *Id.* at 837 (alteration omitted). It was SOLIDFX's tactical litigation decision to drop its reliance damages claim and pursue only lost profits, not the enforceability of the License Agreement, that was responsible for its lack of recovery. *Id.* at 838.

For these reasons, and because this court concluded that the damages limitation explicitly excluded any award of lost profits, this court held that the damages limitation

13

was enforceable.[3] The court reached this conclusion after considering SOLIDFX's argument that the damages limitation was unenforceable because of Jeppesen's fraud. There is no question that SOLIDFX fully presented this issue in *SOLIDFX I*. In Section IV(B) of its opening brief, titled "Jeppesen's Fraudulent Conduct Renders Section 8.2 Unenforceable," SOLIDFX argued that the damages limitation in § 8.2 was unenforceable because the jury found that Jeppesen was liable for fraudulent misrepresentation and concealment. In response, Jeppesen argued that SOLIDFX must be bound by the agreement because neither the jury's findings nor Colorado law supported the conclusion that Jeppesen's conduct rendered the provision unenforceable.

In its petition for rehearing following issuance of the opinion in *SOLIDFX I*, SOLIDFX argued that "the district court should be directed to reconsider its ruling in light of the panel's interpretation of Section 8.2 and the jury's finding of Jeppesen's fraud." Jeppesen responded that the district court vacated the jury's findings that

---

[3] SOLIDFX argues in its brief that the holding in *SOLIDFX I* was merely that the damages limitation was generally enforceable, not that it was enforceable against SOLIDFX in this case. We disagree. This court's analysis, together with its instructions to the district court that "lost profits are not recoverable" and its vacatur of the portion of the verdict awarding lost profits, clearly demonstrate that this court concluded the damages prohibition was to be enforced in this case. *Id.* at 843. Certainly, vacatur on its own does not preclude a subsequent entry of the same award based on different grounds. *See Cook v. Rockwell Intern. Corp.*, 790 F.3d 1088, 1102 (10th Cir. 2015) ("After a court of appeals vacates a judgment[,] a district court on remand often will enter a new judgment in the same party's favor on the existing record if one can be had unaffected by the error found in the appeal."). But SOLIDFX did not raise new grounds; rather, it attempted to relitigate the same grounds disposed of in *SOLIDFX I*.

14

Jeppesen had engaged in fraudulent conduct and that its conduct was not willful and wanton. This court denied SOLIDFX's petition. That denial bolsters our conclusion that *SOLIDFX I* barred reconsideration of this issue by the district court. *See United States v. Webb*, 98 F.3d 585, 588 (10th Cir. 1996) (concluding mandate rule applied to preclude reconsideration of Webb's argument in part because, although the first opinion did not specifically address the argument, the panel had denied Webb's petition for rehearing explicitly advancing the same argument).

Based on the foregoing, there can be no question that this court in *SOLIDFX I* heard, considered, and rejected SOLIDFX's argument. This court's instructions left no room for the district court to consider the same willful-and-wanton argument that this court rejected in holding the damages limitation enforceable. We acknowledge the "presumption in favor of a general remand." *Dish Network Corp.*, 772 F.3d at 864 (quotation omitted). But that presumption is rebutted in this case because *SOLIDFX I* "left nothing for the district court to address beyond the ministerial dictates of the mandate." *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 114 F.3d 1513, 1521 (10th Cir. 1997) (quotation omitted). By asking the district court to reconsider the same argument that was rejected, SOLIDFX's Rule 60(b) motion directly contravenes the holding in *SOLIDFX I*. We thus affirm the district court's denial of SOLIDFX's motion.

III

We now turn to Jeppesen's cross-appeal. Jeppesen challenges the district court's denial of its Rule 59(e) motion to amend, correct, or modify the district court's Second

15

Amended Judgment. Jeppesen argues that the Second Amended Judgment, "which eliminates damages for [SOLIDFX's] fraud claims but not liability, reflects an incorrect application of th[e] law." Jeppesen Br. at 41. Jeppesen further argues that the district court erred in concluding that Jeppesen waived its challenge to the entry of liability on the fraud claims by failing to raise that issue in its first appeal.

We review a trial court's disposition of a Rule 59(e) motion for abuse of discretion. *See Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1228 (10th Cir. 2016). A "district court abuses its discretion if it made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances," or if its "discretion was . . . guided by erroneous legal conclusions." *Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004-05 (10th Cir. 2017) (quotations omitted). "Rule 59(e) relief is available in limited circumstances, including (1) an intervening change in the controlling law, (2) when new evidence previously was unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* at 1004 (quotation and alterations omitted).

Under Rule 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."[4] Fed. R. Civ. P. 59(e). As the parties both acknowledge, the crux of the issue in this appeal is whether the district court's Second Amended Judgment deviated from the original and amended judgments that it entered

---

[4] Moreover, a court may not extend the time to act under Rule 59(e). *See* Fed. R. Civ. P. 6(b)(2); *Weitz v. Lovelace Health Sys., Inc.*, 214 F.3d 1175, 1179 (10th Cir. 2000).

prior to *SOLIDFX I*. If the Second Amended Judgment in fact deviated from the pre-*SOLIDFX I* judgments, then Jeppesen's challenge is timely.

Jeppesen argues in its cross-appeal that "[t]he Second Amended Judgment was Jeppesen's first notice that the district court believed it had left the liability findings for the fraud claims intact, in violation of the economic loss rule." Jeppesen Br. at 41. Indeed, Jeppesen notes, "[t]he district court itself acknowledged that this was the first judgment in which [it] 'explicitly stated' that the fraud findings remained intact." *Id.* Jeppesen further argues that "the clear import of the district court's prior rulings was that, in declaring the fraud claims 'barred,' it had vacated those claims in their entirety—the relief that Colorado law requires." *Id.* Thus, Jeppesen argues, it "had no previous reason to appeal to this Court on this issue because, by any objective measure, the district court had granted Jeppesen the relief it requested in resolving Jeppesen's Rule 50(a) and Rule 50(b) motions." *Id.* at 41–42. Jeppesen in turn argues that the Second Amended Judgment "is inconsistent with both Colorado law and the import of [the district court's] prior orders." *Id.* at 43. Specifically, Jeppesen argues that "the findings of liability cannot remain 'intact,' because Colorado's economic loss rule barred [SOLIDFX]'s fraud claims." *Id.*

Addressing these arguments in order, we agree with Jeppesen that the Second Amended Judgment deviated substantially from the original and amended judgments. As noted, the district court granted Jeppesen's Rule 50(a) and 50(b) motions, both of which argued that Colorado's economic loss rule barred SOLIDFX's fraud claims. We

17

conclude that those rulings would have led a reasonable party in Jeppesen's position to believe that the fraud claims were barred in their entirety.[5]  In turn, neither the original judgment nor the amended judgment, both of which were entered by the district court prior to the parties' first appeals, alerted the parties to the fact that the district court believed that the fraud claims survived its grant of JMOL in favor of Jeppesen and that it intended to enter a judgment of liability against Jeppesen on SOLIDFX's fraud claims. Indeed, neither the final judgment nor the amended judgment directed the entry of judgment in favor of either party on SOLIDFX's fraud claims.  Instead, the original judgment, which was issued shortly after the district court granted Jeppesen's Rule 50(a) motion, simply stated: "The portion of the jury's verdict awarding monetary damages for fraudulent misrepresentation is VACATED."  ECF No. 370 at 2.  And the amended judgment made no mention at all of the fraud claims.  Thus, as the district court itself ultimately acknowledged, "the Second Amended Judgment [wa]s the first judgment in which the Court explicitly stated that the jury's liability findings as to fraudulent misrepresentation and fraudulent concealment . . . remain[ed] intact."  ECF No. 479 at 9.

---

[5] In its order granting JMOL in favor of Jeppesen on the fraudulent misrepresentation claim, the district court noted that, under Colorado law, "[f]or a tort claim to survive application of the economic loss rule, the duty must arise independently of any contractual obligation."  ECF No. 369 at 11 (citing *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1263 (Colo. 2010)).  The district court in turn concluded that SOLIDFX "failed to show that Jeppesen had a separate and independent legal duty which support[ed] its claim for fraudulent misrepresentation."  *Id.* at 12.

In light of this procedural history, we conclude that Jeppesen could not reasonably have known, until the district court entered the Second Amended Judgment, that the district court intended for the fraud claims to survive and for the jury's liability findings on the fraud claims to stand.[6] We therefore conclude that Jeppesen's Rule 59(e) motion to amend, correct, or modify the district court's Second Amended Judgment was timely filed.

Relatedly, we reject the district court's conclusion that the mandate rule effectively prohibited it "from revisiting the alleged error." ECF No. 479 at 10. As previously noted, [t]he mandate rule . . . provides that a district court must comply strictly with the mandate rendered by the reviewing court." *Harte*, 940 F.3d at 510. In this case, the mandate in *SOLIDFX I* said nothing about the fraud claims, and cannot otherwise be read as granting the district court discretion to amend the judgment regarding the fraud claims. Thus, we conclude that the district court violated the mandate rule by inserting the language in the Second Amended Judgment that purported to impose liability on Jeppesen for the fraud claims.

---

[6] SOLIDFX, as evidenced by its docketing statement in this case, which was filed prior to Jeppesen's appeal, likewise appears to have believed that its fraud claims were barred in their entirety by the economic loss rule. *See* SOLIDFX Docketing Stmt. at 5 (noting that the district court "vacated the verdict related to SOLIDFX's claims for fraudulent misrepresentation and fraudulent concealment as barred by the economic loss rule.").

19

As for the merits of Jeppesen's arguments, the Colorado Supreme Court has described its economic loss rule as follows: "A breach of a duty which arises under the provisions of a contract between the parties must be addressed under contract, and a tort action will not lie."[7] *Town of Alma*, 10 P.3d at 1262. Only "[a] breach of a duty arising independently of any contract duties between the parties" will "support a tort action." *Id.* In this case, the district court concluded that this economic loss rule applied to preclude SOLIDFX from recovering on its fraud claims. Contrary to the district court's conclusions in the Second Amended Judgment, this necessarily meant that the fraud claims could not proceed at all; therefore, in the absence of any viable fraud claim, any finding of liability on such claims is without support.

For all of these reasons, we conclude that Jeppesen's Rule 59(e) motion challenging the Second Amended Judgment was timely and should have been granted to correct clear error and to prevent manifest injustice.

IV

With respect to SOLIDFX's appeal (No. 18-1082), we AFFIRM the district court's denial of SOLIDFX's Rule 60(b) motion. With respect to Jeppesen's cross-appeal (No. 19-1029), we REVERSE the district court's denial of Jeppesen's

---

[7] The phrase "will not lie" is well understood in the legal context to mean "cannot be maintained" or "cannot proceed." *E.g.*, *Heck v. Humphrey*, 512 U.S. 477, 486 n.6 (1994) (holding that a § 1983 action for wrongful conviction "will not lie" unless the conviction or sentence has already been invalidated).

Rule 59(e) motion and REMAND with directions to modify the judgment to state that final judgment is entered in favor of Jeppesen on SOLIDFX's claims for fraudulent misrepresentation and fraudulent concealment.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

**Nos. 18-1082, 19-1029, SOLIDFX, LLC v. Jeppesen Sanderson, Inc.**
**LUCERO**, J., concurring in part and dissenting in part:

Ignoring the indisputable fact that final judgment was entered on all claims brought by SOLIDFX pursuant to Federal Rule of Civil Procedure 58(a) on June 26, 2014; ignoring the proposition that the deadlines for appeal of or any motions relating to that judgment were triggered by that date; ignoring the fact that an appeal was taken from that final judgment before our court; and ignoring that the subject portion of the judgment was neither presented in that appeal, disturbed by our decision, nor amended by the court on remand; the majority proceeds to promote a remarkable and indefensible proposition: although the court's Original Judgment was entered solely in favor of SOLIDFX, Jeppesen was not "alerted . . . to the fact that the district court . . . intended to enter a judgment of liability against Jeppesen on SOLIDFX's fraud claims." (Maj. Order & J. 18). Respectfully, my colleagues permit Jeppesen to file a Rule 59(e) motion that would have been due in all other cases 28 days after the judgment. That motion was three years late.

The only way Jeppesen could not have been "alerted" that the court entered judgment for SOLIDFX is if Jeppesen did not bother to read the judgment. The appeal in SOLIDFX I could not have been brought before us unless the judgment of June 26, 2014 was final and complete—we do not permit appeals from partial judgments. See Dodge v. Cotter Corp., 328 F.3d 1212, 1221 (10th Cir. 2003) ("Under § 1291, we have jurisdiction only over a 'final' decision of a district court—that is, a decision that . . . reflect[s] the termination of all matters as to all parties and causes of action." (quotations omitted)). A

party's failure to follow the Federal Rules of Civil Procedure cannot be excused by its ignorance, and the proposition that the majority announces today is more than an outlier—it violates every concept of due process. For this reason, I join Parts I and II of the majority order and judgment but respectfully dissent from the majority's analysis and disposition of Jeppesen's cross-appeal in Part III.

As the majority would have it, the issue before us is whether the district court's post-SOLIDFX I Second Amended Judgment deviated from its Original Judgment.[1] (Maj. Order & J. 16-17.) They assert that if the judgments differed, Jeppesen should be permitted to move to amend the Second Amended Judgment; but if the judgment remained the same, it would have been required to challenge that ruling when the Original Judgment was entered in 2014. Without grappling with whether the district court would have had authority to enter a new judgment that deviated from the Original Judgment on the fraud claims, which had not been appealed or implicated in our decision in SOLIDFX I, the majority states: "Jeppesen could not reasonably have known, until the district court entered the Second Amended Judgment, that the district court intended for the fraud claims to survive and for the jury's liability findings on the fraud claims to

---

[1] Prior to SOLIDFX I, the district court issued its First Amended Judgment, which amended the Original Judgment to reinstate "[t]he portion of the jury's verdict awarding damages for future lost business value" on SOLIDFX's breach of contract claim and to award SOLIDFX additional damages, interest, and costs. Because it did not alter any other part of the Original Judgment, including the entry of judgment for SOLIDFX, I focus on the Original Judgment.

2

stand." (Maj. Order & J. 19.) I disagree. The judgment of June 26, 2014 was final and did not favor Jeppesen. I conclude that the Second Amended Judgment does not deviate from the first judgment and that Jeppesen's motion is untimely.[2]

In its Original Judgment, denominated "<u>FINAL JUDGMENT</u>," the court stated that Jeppesen's "renewed Rule 50(a) Motion for Judgment as a Matter of Law (ECF No. 341) is GRANTED IN PART and DENIED IN PART." It specified that "[t]he portion of the jury's verdict awarding monetary damages for fraudulent misrepresentation is VACATED; . . . [and] Final Judgment is entered in favor of [SOLIDFX] and against [Jeppesen] in the amount of $21,537,503 based on the jury's verdict, $1,965,592 in pre-judgment interest . . . , and post-judgment interest at the rate set forth in 28 U.S.C. § 1961." In the Second Amended Judgment, the court stated that "[t]he jury's findings of liability remain intact as to all [SOLIDFX's] claims that were submitted to the jury, and [SOLIDFX] remains entitled to judgment against [Jeppesen] as to liability on all its claims . . . ." This necessarily includes the fraud claims. It is difficult for me to perceive how counsel for Jeppesen can make the argument that it does with a straight face considering the clarity of the forgoing language and considering that the jury had entered a verdict finding that Jeppesen had defrauded SOLIDFX and awarded SOLIDFX damages because of that fraud.

---

[2] Because I would conclude that Jeppesen's motion is procedurally barred, I would not reach the merits of the district court's ruling that Colorado's economic loss rule does not bar the claims in their entirety.

3

Reviewing the Original and Second Amended Judgments side by side, I respectfully disagree with my colleagues that the district court changed its ruling. In the Original Judgment, the court clearly enters judgment only in favor of SOLIDFX; it does not enter judgment for Jeppesen on any claim. Given that there is no entry of judgment for Jeppesen, I fail to see how the district court's statement in its Second Amended Judgment that SOLIDFX "remains entitled to judgment" is incorrect. The Second Amended Judgment merely recognizes that the Original Judgment entered judgment for SOLIDFX on all claims, including the fraud claims. Rule 59(e) required Jeppesen to challenge the court's judgment on the fraud claims within 28 days of the entry of the Original Judgment. See Fed. R. Civ. P. 59(e).

In order to conclude that the Jeppesen motion was timely, the majority deems reasonable Jeppesen's unfounded conclusion that judgment had been entered in its favor on June 26, 2014. (Maj. Order & J. 18-19.) That sounds more like a statement of hope than an expression of fact on counsel's part. As does Jeppesen, the majority ignores the fact that the only entry of judgment in 2014 was for SOLIDFX. (Maj. Order & J. 18.) Rejecting the logical reading that the court entered judgment in favor of SOLIDFX on all claims, the majority concludes that without enumeration of the disposition of each claim, "Jeppesen could not reasonably have known, until the district court entered the Second Amended Judgment, that the district court intended for the fraud claims to survive and for the jury's liability findings on the fraud claims to stand." (Maj. Order & J. 19.) I disagree. Moreover, I note that the SOLIDFX I panel had no trouble reading the

4

judgment properly.  See 841 F.3d at 832 n.2 ("The district court <u>vacated the portion of</u> <u>the jury's verdict awarding damages</u> for fraudulent misrepresentation.  SOLIDFX does not appeal that ruling." (emphasis added)).  Were we following our precedent, that statement would be considered the law of the case.  See <u>Dobbs v. Anthem Blue Cross &</u> <u>Blue Shield</u>, 600 F.3d 1275, 1280 (10th Cir. 2010) ("[T]he law of the case doctrine applies to issues previously decided, either explicitly or by necessary implication." (quotation omitted)).

Admittedly, the district court's language in its corresponding orders was imprecise.  At times, it referred to its ruling as vacating its award of damages; at other times, as barring claims.[3]  But the inconsistency of the court's wording does not alter the

---

[3] In addition to ignoring the judgment, the majority overlooks inconsistent language within the orders themselves.  The orders, which oscillate between barring claims and vacating damages, hardly support a reasonable-yet-mistaken belief that the district court intended to enter judgment for Jeppesen.

For example, in its order granting Jeppesen's renewed Rule 50(a) motion, the district court referred to vacatur of damages, holding that because "the same legal duty formed the basis for both [SOLIDFX's] breach of contract and fraudulent misrepresentation claims, [SOLIDFX] cannot recover additional monetary damages on the fraud claim.  Accordingly, the Court vacates the portion of the jury's verdict awarding [SOLIDFX] $173,000 on its fraudulent misrepresentation claim."  The court further stated that "[t]he portion of the jury's verdict awarding monetary damages for fraudulent misrepresentation is VACATED," and it ordered the Clerk to "enter judgment in favor of [SOLIDFX]."

In contrast, in its order denying Jeppesen's Rule 50(b) motion and motion for a new trial regarding SOLIDFX's fraudulent concealment claim, the court referred to its ruling on Jeppesen's Rule 50(a) motion as holding that SOLIDFX "had failed to show that [Jeppesen] had an independent legal duty to [SOLIDFX], and therefore [SOLIDFX's] torts claims were barred by the economic loss doctrine."  The order further stated:

5

fact that the court did not enter <u>judgment</u> for Jeppesen on the fraud claims, as it would

have been required to do had it vacated the jury's liability findings. Rule 59(e) motions

pertain to judgments, not orders. <u>See</u> Fed. R. Civ. P. 59(e); <u>see also</u> <u>Kanatser v. Chrysler</u>

<u>Corp.</u>, 199 F.2d 610, 622 (10th Cir. 1952) ("[W]here the trial court files a memorandum

of its views indicating what its judgment will be, there is no final judgment until it is

formally entered by the clerk at the court's direction."); 12 Moore's Fed. Prac.—Civ.

§ 58.02(2) (A decision or opinion "is not a 'judgment,' but rather a statement of the

reasons supporting the judgment."). And Rule 58 requires the entry of judgment, with

limited exceptions not relevant here, "on a document separate from the opinion or

memorandum." <u>United States v. Clearfield State Bank</u>, 497 F.2d 356, 358-59 (10th Cir.

1974); Fed. R. Civ. P. 58(a). "Entry [of judgment] . . . occurs only when the essentials of

a judgment or order are set forth in a written document separate from the court's opinion

---

> This holding resulted in the Court vacating the jury's award of $173,000 on
> [SOLIDFX's] fraudulent misrepresentation claim. . . . While the Court's
> order mentioned the fraudulent concealment claim, the Court did not
> specifically vacate the jury's verdict on that claim. . . .
> [Jeppesen] now seeks clarification that the Court's ruling applies to both
> [SOLIDFX's] claim for fraudulent misrepresentation and the claim for
> fraudulent concealment. It does. [SOLIDFX] failed to show that [Jeppesen]
> owed it a legal duty that was independent of any contractual duty and,
> therefore, the economic loss rule bars both fraud claims. . . . Accordingly,
> the Court finds that [SOLIDFX] is not entitled to collect damages on its
> fraudulent concealment claim, and the jury's award of $1 on that claim is
> vacated.

Particularly when read in conjunction with the Original Judgment, a reasonable party in
Jeppesen's position would—at the very least—question whether judgment had been
entered in its favor.

6

and memorandum <u>and</u> when the substance of this separate document is reflected in an appropriate notation on the docket sheet."[4] <u>Herrera v. First N. Sav. & Loan Ass'n</u>, 805 F.2d 896, 899 (10th Cir. 1986) (quotation omitted). Rule 58(a) is "a 'mechanical rule' that must be 'mechanically applied' to avoid uncertainties as to the date a judgment is entered." <u>See</u> <u>Warren v. Am. Bankers Ins.</u>, 507 F.3d 1239, 1242 (10th Cir. 2007).

In the closely related context of issues relating to the finality of judgments for purposes of appeal, we have consistently held that the entry of judgment—separate and distinct from a memorandum, opinion, or order setting forth the court's reasoning— controls the deadline to appeal under Federal Rule of Appellate Procedure 4. <u>See, e.g.</u>, <u>United States v. Torres</u>, 282 F.3d 1241, 1244 (10th Cir. 2002) (because of "some uncertainty [in the court's order] about whether final judgment had entered," order was not a judgment for purposes of Rule 58(a) (alteration omitted)); <u>United States v. City of Kan. City</u>, 761 F.2d 605, 606 (10th Cir. 1985) (memorandum containing dispositive language but also discussion of legal issues not a final judgment under Rule 58). This

---

[4] I further note that the docket entry similarly reflects entry of judgment only for SOLIDFX:

> FINAL JUDGMENT re: 369 Order, Final Judgment is entered in favor of Plaintiff and against the Defendant in the amount of $21,537,503 based on the jury[']s verdict, $1,965,592 in pre-judgment interest ($1,610,482 + ($5,073 x 70 days)), and post-judgment interest at the rate set forth in 28 U.S.C. § 1961. Plaintiff is awarded costs, pursuant to the procedures set forth in Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, upon the filing of a Bill of Costs within 14 days [of] entry of judgment, by Judge William J. Martinez on 6/26/2014. (evana, ) (Entered: 06/26/2014).

requirement "for simple, self-contained, complete (and hence final) judgments describing the relief to which the prevailing party is entitled" is essential to eliminate uncertainty. Am. Interins. Exch, v. Occidental Fire & Cas. Co., 835 F.2d 157, 160 (7th Cir. 1987); see also Cooper v. Town of E. Hampton, 83 F.3d 31, 33 (2d Cir. 1996) ("The reason for adhering to the formalism of the separate document requirement is to avoid confusion as to when the clock starts for the purpose of an appeal.").

In this context, I would similarly conclude that the judgment, rather than the orders, is the pertinent document. Moreover, the self-conflicting language in the district court's orders—mirroring the "mélange of guesswork and confusion that antedated the separate-document rule," City of Kan. City, 761 F.2d at 607—makes it even more necessary for the parties to closely scrutinize the judgment. Although the orders themselves may not clearly evince the district court's judgment, the Original Judgment clearly stated: "Final Judgment is entered in favor of [SOLIDFX] and against [Jeppesen]."

Moreover, the district court's entry of the Second Amended Judgment does not render Jeppesen's motion timely. Under Rule 59(e), "when a court alters its judgment, a person aggrieved by the alteration may ask for a correction." McNabola v. Chi. Transit Auth., 10 F.3d 501, 521 (7th Cir. 1993) (emphasis and quotation omitted). But the correction sought must pertain to the alteration, not to unaltered parts of the judgment. See Progressive Indus., Inc. v. United States, 888 F.3d 1248, 1252-55 (Fed. Cir. 2018); Tru-Art Sign Co., Inc. v. Local 137 Sheet Metal Workers Int'l Ass'n, 852 F.3d 217, 221-

8

22 (2d Cir. 2017) ("When both an initial judgment and an amended judgment exist, the timeliness of a Rule 59(e) motion is determined from the date of the amended judgment only if the motion bears some relationship to the district court's alteration of the first judgment."); Harrell v. Dixon Bay Transp. Co., 718 F.2d 123, 127 (5th Cir. 1983); see also Banister v. Davis, 140 S. Ct. 1698, 1703 (2020) (a Rule 59(e) motion must be "tightly tied to the underlying judgment"). Because the district court did not and could not have amended its judgment on the fraud claims, Jeppesen's belated challenge remains untimely.[5]

Requiring parties to closely read judgments furthers the public's "strong interest in protecting the finality of judgments." Nelson v. City of Albuquerque, 921 F.3d 925, 929 (10th Cir. 2019). It ensures the proper functioning of our adversarial system, "which relies chiefly on the parties to raise significant issues and present them to the courts in the appropriate manner at the appropriate time for adjudication." Sanchez-Llamas v. Oregon, 548 U.S. 331, 356 (2006) (emphasis omitted). "Procedural default rules are designed to

---

[5] Further, because Jeppesen failed to appeal the district court's ruling on the fraud claims in SOLIDFX I, the mandate rule precludes the district court from amending its judgment on remand. "[T]he mandate rule applies not only to issues on which the higher court has ruled but also forecloses litigation of issues decided by the district court but forgone on appeal . . . ." Est. of Cummings v. Cmty. Health Sys., Inc., 881 F.3d 793, 801 (10th Cir. 2018) (quotation and alterations omitted). "Failing to raise an issue on appeal . . . has the same consequences for that litigation as an adverse appellate ruling on that issue." Id. Once Jeppesen appealed the Original and First Amended Judgments in SOLIDFX I without challenging the entry of judgment on the fraud claims, the mandate rule foreclosed the district court from amending its judgment regarding those claims.

9

encourage parties to raise their claims promptly and to vindicate the law's important interest in the finality of judgments." Id. (quotation omitted).

Far too many procedural hurdles stood on the track that Jeppesen was required to run in order to receive the winner's cup. One after another of those hurdles has been tripped by Jeppesen along the way. My colleagues may well be willing to overlook those defaults. I am not. The precedent that this case creates is one that I am not willing to endorse. That precedent is pronounced over my dissent.

10